This cause came on to a hearing on the 23d March, 1785/ and on the 2d April following, this entry is made in the register’s book, « Ordered, that this hill be dismissed with costs.” There are no reasons or grounds of the decree of the court put on record; for it was then' the general practice of the court to assign the reasons of their judgment verbally.* But on examination of the papers of the late chancellor Mathews, a brief of the bill and answer, together with his notes of the argument of counsel, and remarks on the cases cited were found,— That brief is as follows;
Court refused to decree in favour of anagreement to make mutual wills, for want of sufficient proof
« The complainant by his bill charges, that in or about the year 1766, he and the late John Izard, Esq. of the state of South Carolina, being young men, and heads of two collateral branches, sprung from one common ancestor, who early settled in this country, entered into the following mutual agreement, viz. that if either of them should die without male issue, he should give and bequeath by will, the sum of five thousand pounds sterling to the survivor, for the purpose of keeping up the name and consequence of the'family — -but that being a young man, little informed of the formality required by law in such transactions, being likewise nearly related to and ao quainted with the said John Izard, and having reliance on his honour and integrity in fulfilling the said agreement, the complainant neither demanded nor thought it necessary to demand, that the same should be in writing and subscribed by them, (in which opinion he was confirmed at a considerable time afterwards by speaking of the said agreement to the said John Izard, who neither denied nor disapproved of the same) — The complainant farther declares, that the said agreement when made, was neither unreasonable, nor unfavourable on the part of the said John Izard, as he the said John Izard was then a healthy *118 young man, and married to a young lady, who had already borne him a child, and the complainant himself was unmarried — That considering himself bound in ho-nour a»d conscience to perform his part, he constantly in-sel^ ™ every will which he afterwards executed, a clause bequeathing the sum of five thousand pounds sterling to the said John Izard, in such case as aforesaid, as may appear by a will ready to be produced, which v as executed by him when embarking for Europe in 1769$ and was further confirmed, except in some particulars not relative to the present matter, by a codicil in the year 1748$ which said will and codicil were never cancelled till after the death of the said John Izard$ and he refers to them as a proof of his having executed in part the said agreemcnt$ and as a further proof remarks, that at the time of executing the said will he was married, and had two daughters alive — that his wife was ensient of another, and that it would have been very extraordinary under such circumstances, that he should give away so large a sum from those children (and that to one already possessed of a large increasing estate, without any family hut a wife,) if he had not considered himself obliged thereto by the said agreement — -That in effect the said John Izard had very nearly succeeded to the said legacy, in consequence of the complainant’s having narrowly escaped with life from a shipwreck on his return from Europe in 1770, in which case the said John Izard would have reaped all the advantage now claimed by him, as survivor, according to the said agreement, although at that time the complainant would have left a wife and two daughters alive — In consideration of all which he hoped, that the said Jphn Izard had on his part equally provided for the performance of the said agreement by bequeathing to him five thousand pounds as aforesaid: But that the said John *119 Izard hath since died without any issue whatever, and hath not made any such provision as aforesaid, but by his will hath devised and bequeathed the bulk and residue of a very large estate to Ids sister Mary Middleton, of which will Arthur Middleton, of the state aforesaid, is cole, acting executor, who refuses to execute the said agreement, as it ought to be on the part of the said John Izavd, hut gives out that the same was not made seriously and with intention to be executed, whereas the truth is otherwise, and it was in part executed by the complainant. Wherefore, that the said Arthur Middleton may be compelled fully to perform the. said agreement, and to pay the said sum of five thousand pounds with interest from the death of the said John Izard, and that he may be relieved . in the premises is the prayer of the bill.
■<s The defendant, Arthur Middleton, by his answer admits, that lie is possessed of a considerable real and personal estate, formerly the property of John Izard, Esq. deceased, which was devised to defendants wife, although he is not sole surviving executor of the will, nor has qualified, having been sent a prisoner from this state soon after, and not having returned till after the death of Mrs. Izard, the widow of John Izard, on which event the estate devolved into his hands — -He denies that any formal requisition was ever made to him by complainant for payment of sum in hill mentioned, though he al lows if there had, he should not have complied, and in ids opinion with good reason, as by such compliance he should not only have failed in duty to his wife and children, for whom he considers himself a trustee, but also would have thrown a slur on the memory of his friend and benefactor — Says that he was a stranger to aii the circumstances mentioned in bill, relative to agreement therein charged, never having heard the deceased alter a syllable upon the matter, although he lived in intimacy with him, and attended him in his dying moments. Nor does he believe that deceased ever considered any words which may have passed on the subject, as creating a positive agreement, or obligatory on either party, because being a man of known, kenour, had tea thought sc, ks *120 Would have fulfilled the same, more especially as there was nothing to prevent it, and his fortune was affluent— nor can defendant conceive that such omission could pro-ceet* from want of recollection, as deceased made several wills, in neither of which, as defendant is assured, was any notice of such agreement, or any legacy to complainant — And as complainant has appealed to his own will, as proof of his sense of the supposed agreement, defendant hopes he may offer to the court the last will of the deceased, as sufficient voucher, that his sentiments on the subject were very different — Defendant looks upon the will, as fully declarative of the fact, but if thought necessary, the testimony of several persons can be produced, who have heard the deceased speak of the matter in a manner no way indicating an idea of his having bound himself by a promise — Defendant therefore hopes, that the court will not decree in favour of complainant, and thereby compel him to give away the property of his wife and children, vested in them by the will of her brother — a decree which would stigmatize the memory of the deceased, and though apparently advantageous to complainant, may hereafter affect his family by opening the way to a new and easy mode of diminishing their wealth; He trusts that your honours will never admit a principle, fraught with consequences pernicious to society, by exposing not only the unwary but the cautious to the wiles of the designing, which would be sufficient to shake the foundation of society, loosen every tie of property, and tend to corrupt the morals of a whole people. By expressing these sentiments and apprehensions, he declares that he does not mean to impute any sinister views to complainant, nor to cast the slightest aspersion upon one whose integrity and honour he holds in high estimation. Defendant insists on the benefit of the statute or trauds*— denies combination — and prays to be dismissed with costs.”
*121 The case was argued by Mr. William Drayton, Mr. Bee, Mr. Edward Rutledge, and general Charles Cotes-worth Pinckney, who were counsel in the cause. The arguments of the counsel are not preserved, but the following cases appear to have been cited: For complainant, 1 Vern. 16, 17, 48. 1 Eq. Cases abr. 19-21. 1 Bac. abr. 75. 1 Bla. Rep. 353. 2 Vern. 98, 200, 253, 455. 2 Atk. 98-100. 1 Atk. 447, 13. 3 Atk. 4. 2 Chanc. Ca. 164. 1 Reps. in Eq. 3.1 Domat. 34, 431—For the defendant, Parl. Cases, 76. 2 Vern. 215, 269, 291, 627. 2 Atk. 136, 467. 2 Eq. Cases, 45. 1 P. Wims. 618, 770. Cas. in Eq. 37. 1 Vesey, 279, 305. 1 Inst. 52. 3 P. Wms. 130. 5 Burr, 2804. 3 Bro. 257. 6 Bro. 45. 2 Cas. in Eq. abr. 48, 15. Lofft’s Reps. 804. Gilb. in Eq. 238.
Chancellor Mathews commented on these cases; remarking, that in the case cited for plaintiff from 1 Yern. 48, the party in whose favour the agreement was decreed to be executed, was heir at law to the land in dispute. That the cases from Eq. Cas. abr. 2 Vern. 1, 2, & 3 Atk. and 2 Chanc. Cas. had no application: And that the decree stated in 1 Rep. in Eq. appears to have been founded on the acquiescence of the defendant for twenty-one years after he came of age, therefore an agreement strongly presumed to have been made between the parties: That the case from 1 Bla. Reps. 353, does, not appear to contradict the case in Viner: That lord Mansfield does not deny the law on the statute of frauds; but said it was a fit case for the consideration of a jury. But it was widely different from the principal case — for the party contracting had received a valuable consideration, viz. the service of the plaintiff at very inferior wages, with a prospect of being compensated at a future day; therefore he sustained an injury by the defendant’s testator not having fulfilled his part of the contract. But in the principal case, no injury has been done to the complainant, Mr. Ralph Izard, it being ah initio, a mere affair of chances. The chancellor stated his agreement with Viner and 1 Raymond, 316, who are opposed to Salkeld, 1 vol. 280.
*122 The chancellor then proceeded as follows: £< There are several points to be considered in this case — 1st, le it within the statute of frauds? If not, is there, 2dly, suf-^Aent parol proof of the agreement? Sdly, has there been a performance of the agreement by either of the parties? On the first point, I am of opinion it is within the statute» The words of the statute which apply to this case are, £ or upon any agreement which is not to be performed within the space of one year from the making’ thereof, unless in writing and signed,’ &c. This agreement rested on a contingency whether either of the parties died (within the year, or not. This is the only doubtful point» But if the W’ords and intent of the statute are thoroughly considered, the doubt vanishes, and gives place to certainty. I consider it as a catching bargain,* in which cases it is an invariable maxim, £ that contingency shall be of no avail.’ The first object of the statute was to prevent improvident and loose bargains from being carried into execution, as they had been repeatedly found to have been productive of frauds and consequent perjuries. In most of those agreements contingency was set up as the ground for the apparent inequality — but it has been uniformly reprobated. If it were not so, how easily might he evaded in every instance. It would be requisite only to make the agreement executory within the year, with a condition annexed to extend the time on any probable contingency! and which might be carried on to the end of a man’s life. Would not this pave the way for the perpetration of those very frauds against which the statute meant to apply a remedy? Would it not be too lax a construction of the statute to say, that because the agreement might have taken effect within the year, that this circumstance alone is to be regarded? And that the probability that it might not have taken effect within twenty years, is to be totally laid out of the case? And yet is by this construction alone that such an agreement could be taken out of the statute. I think the words do not admit of that construction! because it would be opening the door for the admission of fraud, when the statute intended to exclude it, '3L admit there are many casee *123 iff^ich have been taken net of the statute, which fey a very rigid construction might have been included. But tliccc Cases invariably are, where any evident injustice would arise:, if it were not snj or where one of the. parties would he a considerable loser by having fulfilled his part of the agreement, and the other not. Then consider, ought the danse in Ralph Izard's will to be considered as an execution on his part. I think not, for it does not even take notice, that it was in consequence of such an agreement— hut more especially it ought not, because it had neither substance nor permanency, for it was alone in his power t.acii day to modify it, as suited his own interest, and finally to destroy every vestige of it. For these reasons I am of opinion that this case, is dearly within the statute of iraudsj because the fact is that Mr. John Izard did not die. for many years after the agreement is said to have been made; consequently it could not have been earned, into execution within one year. Therefore it not having been »e reduced to wilting, and signed by the party to lie charged,” the complainant can derive no benefit therefrom, but that defendant's plea ought to be admitted— and the domplamast decreed to pay costs.”

 It is greatly to be regretted, that the minutes which remain of this case, which was very ably argued, by the eminent counsel concerned in it, are so imperfect. The evidence appears to be irrecoverably lost. But it seems that the alledged agreement between Mr. Ralph Izard and Mr. John Izard, to make mutual and corresponding wills, was pot fully made out by sufficiently positive and legal proof; and that the court did not consider the presumption arising from Mr. Ralph Izard’s having made two successive wills conformably to his understanding of a subsisting- agreement, sufficient evidence to establish such an agreement, binding on Mr, John Izard. The court therefore, dismissed the bill of complaint.
This curjous subj ect of agreements by two parties, to make mutual wills, in favour of each other, on, certain contingencies, has not been of. ten litigated in the courts either of England, or of this country. — But Some cases have occurred, The learning upon it is collected by Mr. Hargreave, jn the 2d vol. of his juridical arguments and collections, from p, 272, 390 to 315. It appears that there is one class of cases in which actions have been brought at law, and have succeeded, for breach of agreements, upon the faith of which a person has made his will, or otherwise settled his affairs in a particular manner, or has omitted to *117 make provisions which otherwise he would have made.—1 Leon. 192, Croke Eliz. 163, Rockwood vs. Rockwood 1 Ventr. 318. 2 Lev. 210. T. Raym. 302. 2 Freem. 285, case of Dutton and wife vs. Poole.
Another class of authorities, on compacts, connected with promises ®Ftestamentary or other settlements, consists of cases, in which the courts of equity have enforced such compacts by decreeing specific performance at the suit of those for whose benefit the promises were intended to enure.—Berenger vs. Berenger, lord Nottingham’s cases; see 2d Hargr. 291. Chamberlaine vs. Chamberlaine, Prec. Ch. 3. 2 Freem. 34. Thynn vs. Thynn. 1 Vern. 296; another case in 1689, Prec. in Ch. 5. Leicester vs. Foxcroft, cited in Gilb. Eq. Rep. 11. Devernish vs. Baines, Prec. in Ch. 3. Reech vs. Kennigale, decided by lord Hardwicke in 1748, taken from Mr. Capper’s ms. notes, 2d Hargr. 294. Goilmer vs. Battison, by lord Nottingham, 1 Vern. 48. Cassey vs. Fitton, by lord Nottingham, 2 Hargr. 296. Jones and wife vs. Martin, Anstruther’s Rep 882; see important notes to this case, 2 Hargr. 298.
But the great case on this subject is, that of Durour and wife and others vs. Perrara and wife and others defendants, in which lord Camden, who has treated the subject very luminously, decreed in 1769 that such agreements to make mutual wills, when properly proved, are binding *118 on the parties, and will be enforced by the court of equity.—See 2d Hargr. 304 to 311.
In a later case, lord Walpole ~js. lord Orford, the lord chancellor Loughborough, without denying the doctrine of lord Camden, refused to sustain such an alledged agreement, for want of sufficient proof to establish it.—See 3 Vesey, jun. 402, and 2 Hargr. 272 to 315.

 (" Or upon any agreement that is not to be performed within the apace of one year from the making thereof, unless in writing, and signed by the party to be charged,)